NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| NANCY PARKER WILSON, | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 18-2954-BRM-DEA |
| | : | |
| v. | : | **OPINION** |
| | : | |
| STEPHEN WARD PARKER, ELIZABETH | : | |
| KNOWLES PARKER, THE RECORDER | : | |
| PUBLISHING COMPANY, PARKER | : | |
| PUBLICATIONS, INC., JOHN DOES | : | |
| (1-10), and ABC CORPS. 1-10, | : | |
| | : | |
| Defendants. | : | |
| | : | |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court are: (1) Defendants Stephen Ward Parker ("S.W. Parker"), Elizabeth Knowles Parker ("E.K. Parker"), The Recorder Publishing Company ("Recorder Publishing"), and Parker Publications, Inc.'s ("Parker Publications") (collectively "Defendants") Motion to Dismiss the Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6) (ECF No. 16); and (2) Plaintiff Nancy Parker Wilson's ("Plaintiff") Motion for Writ of Attachment (ECF No. 17). Both motions are opposed. (ECF Nos. 20-21.) Having reviewed the parties' submissions filed in connection with the motions and heard Oral Argument pursuant to Federal Rule of Civil Procedure 78(a) on December 18, 2018, for the reasons set forth below, and for good cause shown, both motions are **DENIED**.

**I.     BACKGROUND**

For the purpose of the Motion to Dismiss, the Court accepts the factual allegations in the Complaint as true and draws all inferences in the light most favorable to Plaintiff. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). Further, the Court also considers any "document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1426 (3d Cir. 1997).

This matter arises from an $1,841,425.30 obligation owed by S.W. Parker and E.K. Parker to Plaintiff, resulting from a series of agreements entered into between them in 2005 governing the sale of Plaintiff's interest in two affiliated, family-owned, New Jersey newspaper businesses, Parker Publications and Recorder Publishing. (Compl. (ECF No. 1) ¶ 1.) Plaintiff, S.W. Parker, E.K. Parker, and Cortlandt Parker ("C. Parker") (collectively, the "Parker Siblings") are siblings who held or hold interests (either personally or through trusts for their respective children) in Parker Publications, Recorder Publishing, and Greenvale Farm, L.L.C. ("Greenvale"). (*Id.* ¶ 14.)

Prior to October 31, 2005, the Parker Siblings each owned ten shares, each constituting twenty-five percent, of the issued and outstanding stock of Parker Publications. (*Id.* ¶ 15.) The Parker Siblings also owned Record Publishing, with Plaintiff owning or controlling shares constituting 13.36 percent of the issued and outstanding stock. (*Id.* ¶ 16.) On October 31, 2005, Plaintiff, S.W. Parker, and E.K. Parker entered into a Stock Purchase Agreement, where S.W. Parker and E.K. Parker agreed to buy Plaintiff's shares in Parker Publications for the sum of $1,050,000. (*Id.* ¶ 18.) The Stock Purchase Agreement was contingent on E.K. Parker and S.W. Parker obtaining financing in the amount of $1,400,00 from Peapack Gladstone Bank ("Peapack"), which was to be guaranteed by Parker Publications and Record Publishing. (*Id.* ¶ 20.)

The closing in connection with the Stock Purchase Agreement occurred on October 31, 2005, for which a Promissory Note in the principal sum of $350,000 was executed in favor of Plaintiff for the balance of the purchase price of Plaintiff's Parker Publication shares. (*Id.* ¶ 22.) Plaintiff's Parker Publication shares were used as collateral security for the repayment of Plaintiff's Parker Publication Stock Note. (*Id.* ¶ 23.) S.W. Parker and E.K. Parker also executed a Commercial Mortgage Note (the "Peapack Mortgage Note") in the amount of $1,400,000 to Peapack. (*Id.* ¶ 24.) Provided there was no default under the Peapack Mortgage Note, Plaintiff was to receive $40,000 annually for repayment of her Parker Publication Stock Note. (*Id.* ¶ 26.)

In connection with the sale of Plaintiff's shares in Parker Publications, Plaintiff, S.W. Parker, and E.K. Parker also entered into a certain Stock Put and Call Agreement pursuant to which Plaintiff, S.W. Parker, and E.K. Parker agreed to secure the value and establish the purchase price of Plaintiff's Recorder Publishing shares. (*Id.* ¶ 27.) However, "purchase and sale could not be exercised by Plaintiff ('put') until payment in full by S.W. Parker and E.K. Parker of the purchase of Plaintiff's Parker Publication Shares, but the purchase and sale could be exercised by S.W. Parker and E.K. Parker ('called') at any time." (*Id.*) As of December 2016, and as allegedly acknowledged and stipulated by S.W. Parker and E.K. Parker, S.W. Parker and E.K. Parker owed Plaintiff $1,841,425.30 on account of the Stock Put and Call Agreement, which continues to have an interest at four percent per annum. (*Id.* ¶ 28.)

In 2016, S.W. Parker and E.K. Parker were unable to satisfy the approximately $1 million balance remaining due under the Peapack Mortgage Note. (*Id.* ¶ 29.) As such, they refinanced the Peapack Mortgage Note with a new loan in the amount of $1,100,000, which was also guaranteed by Parker Publications and Record Publishing and continued to be collateralized with the Mortgaged Properties. (*Id.* ¶ 30.) In the Spring of 2017, in connection with and as a condition of

the new Peapack Loan, the Parker Siblings entered into a Forbearance, Ratification and Subordination Agreement (the "Forbearance Agreement"), where the Parker Siblings agreed to satisfy the New Peapack Loan, including using the proceeds of the sale of the Mortgaged Properties to satisfy it. (*Id.* ¶ 33.) One of the additional requirements of Peapack in executing the new Peapack Loan to S.W. Parker and E.K. Parker was that Plaintiff would subordinate S.W. Parker and E.K. Parker's obligations under Plaintiff's Stock Put and Call Agreement to the new Peapack Loan in addition to the existing subordination of the Parker Publication Stock Note. (*Id.* ¶ 31.) Again, under the Forbearance Agreement S.W. Parker and E.K. Parker allegedly acknowledged, stipulated and agreed, that the remaining principal balance due to Plaintiff under the Stock Put and Call Agreement as of December 31, 2016, was $1,841,425.30, and that the amount due was to be payable on May 1, 2018, "and [such amount was] not subject to defense offset or claim of any kind." (*Id.* ¶ 34.) The closing on the new Peapack Loan occurred on May 23, 2017. (*Id.* ¶ 35.)

Greenvale is also a family-owned limited liability company formed in 2003 to hold title to the real property located in Portsmouth, Rhode Island. (*Id.* ¶ 37.) On December 27, 2002, the Parker Siblings, the S.W. Parker and E.K. Parker Trusts, the Parker Siblings' mother, and the remaining interest holders, as members, entered into a Limited Liability Company Agreement (the "Greenvale LLC Agreement") of Greenvale to govern the affairs of Greenvale. (*Id.* ¶ 39.) On January 10, 2015, after the death of her mother, Plaintiff became the manager of Greenvale pursuant to the terms of the Greenvale LLC Agreement. (*Id.* ¶ 45.) In addition to her role as manager, she is also a thirty-six percent interest holder. (*Id.* ¶ 48.) The Greenvale LLC Agreement provides that "[n]otwithstanding any of the foregoing to the contrary, no transfers of an interest shall be valid unless a duly executed instrument of assignment in form satisfactory to the Manager is filed with the Company." (*Id.* ¶ 69.)

Approximately six weeks after the closing on the new Peapack Loan, Plaintiff, through counsel, received an e-mail from S.W. Parker and E.K. Parker's attorney advising her that they had transferred all of their membership interests in Greenvale to trusts for the benefit of their children. (*Id.* ¶ 52.) Plaintiff never acknowledged the alleged assignments as required by the Greenvale LLC Agreement. (*Id.* ¶ 70.) Moreover, neither S.W. Parker nor E.K. Parker disclosed the alleged assignments when they were engaging in negotiations relating to their obligations to Plaintiff, the Forbearance Agreement, and their request for subordination to the new Peapack Loan. (*Id.* ¶ 60.) In fact, in connection with the Forbearance Agreement, S.W. Parker and E.K. Parker allegedly agreed to pledge their interests in Greenvale as collateral for their obligations to Plaintiff. (*Id.* ¶ 64.) Based on Plaintiff's understanding that S.W. Parker and E.K. Parker owned their interests in Greenvale, she executed the subordination agreement allowing S.W. Parker and E.K. Parker to refinance the personal $1.1 million obligation to Peapack for the new Peapack Loan. (*Id.* ¶ 68.)

As a result of S.W. Parker and E.K. Parker's alleged fraudulent transfers of their Greenvale interests, Plaintiff filed this lawsuit on March 1, 2018, alleging nine counts: (1) declaratory judgment of invalidity and/or unenforceability of alleged assignments; (2) amounts due and owing pursuant to Forbearance Agreement and Recorded Put/Call; (3) breach of the covenant of good faith and fair dealing; (4) fraudulent transfer pursuant to N.J. Stat. Ann. § 25:2-25(a); (5) fraudulent transfer pursuant to § 25:2-25(b) and 25:2-27(a); (6) common law fraud/misrepresentation; (7) fraudulent transfer pursuant to N.J. Stat. Ann. § 25:2-1; (8) fraudulent conveyance scheme; and (9) requesting accounting of Parker Publications and Recording Publishing. (*See* ECF No. 1.)

On May 16, 2018, Defendants filed a Motion to Dismiss. (ECF No. 16.) Plaintiff opposes the Motion. (ECF No. 21.) On May 25, 2018, Plaintiff filed a Motion for Writ of Attachment.

(ECF No. 17.) Defendants filed an opposition to the Motion for Writ on June 18, 2018. (ECF No. 20.) The Court addresses both motions in turn.

## II.    LEGAL STANDARD FOR MOTION TO DISMISS

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [plaintiff]." *Phillips*, 515 F.3d at 228. "[A] complaint attacked by a . . . motion to dismiss does not need detailed factual allegations." *Bell Atl. v. Twombly*, 550 U.S. 544, 555 (2007). However, the Plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* This "plausibility standard" requires the complaint allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* (citing *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than an unadorned, the defendant-harmed-me accusation" must be pled; it

6

must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citing *Twombly*, 550 U.S. at 555, 557).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

While as a general rule, a court many not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to 12(b)(6), the Third Circuit has held "a court may consider certain narrowly defined types of material without converting the motion to dismiss [to one for summary judgment pursuant under Rule 56]." *In re Rockefeller Ctr. Props. Sec. Litig.,* 184 F.3d 280, 287 (3d Cir. 1999). Specifically, courts may consider any "'document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d at 1426.

**III. DECISION**

**A. Motion to Dismiss**

**1. Counts I Through VIII**

Defendants' brief is premised on the argument that Counts I through VIII should be dismissed as moot because those Counts rely on an alleged transfer of interests in Greenvale in trusts for the benefit of S.W. Parker and E.K. Parker's children, when "[p]rior to the Complaint having been served on Defendants, Defendants acknowledged that the transfers underling the majority of claims raised in the Complaint, were not effectuated." (ECF No. 16-3 at 6.) S.W. Parker and E.K. Parker contend that their interest in Greenvale remains the same as prior to the purported

transfers, and that the interest was never effectuated because Plaintiff did not sign off on it. (*Id.*)

As such, they argue "[s]ince no transfers occurred, all of these claims are facially deficient." (*Id.* at 7.)[1]

Plaintiff contends both in her opposition papers and at Oral Argument that Defendants never "informed Plaintiff's counsel that Defendants had renounced their argument that there was ever a valid transfer and confirmed that the subject interests remain in their possession." (ECF No. 21 at 17 (citation omitted).) She asserts that after the Complaint was filed Defendants advised they *agreed* to *rescind* the transfers but did not argue the transfers were invalid. (*Id.* (emphasis added).) Moreover, Plaintiff questions whether Defendants agreed to rescind their transfers or stipulated that the transfers were rescinded or never effectuated since "[n]o formal rescission or documentation" ever followed. (*Id.* at 14, 20.) As such, Plaintiff argues Counts I through VIII should not be dismissed as moot.

The Court agrees with Plaintiff. In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), this Court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [plaintiff]." *Phillips*, 515 F.3d at 228. Here, the Complaint alleges S.W. Parker and E.K. Parker transferred their interest in Greenvale in trusts for the benefit of their children. (ECF No. 1 ¶ 52.) The Court must accept that allegation as true. While the Court may consider any "'document *integral to or explicitly relied upon* in the complaint," *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d at 1426, the emails proffered by Defendants explaining their intent to rescind and agreement that the

---

[1] At Oral Argument, Defendants, consistent with their papers, argued Plaintiff should file an Amended Complaint reflecting the dispute at issue, the $1,841,425.30 obligation that is due and owing. They further argued Plaintiff should dismiss the claims involving the fraudulent transfer since Defendants admitted there no transfer occurred.

transfers were never effectuated are neither integral to nor explicitly relied upon in the Complaint.

In fact, these emails were not sent until after the Complaint was filed and, thus, could not be

integral to or relied upon in the Complaint. (*See* ECF No. 16-1.) Moreover, Defendants' emails

are ambiguous. They are unclear as to whether S.W. Parker and E.K. Parker agreed to rescind the

transfers, actually rescinded them, or if the transfers were never effectuated. As such, Plaintiff's

allegation that Defendants transferred their interest in Greenvale cannot be abrogated by

Defendants' external material at this stage of the litigation.[2] Because Defendants' Motion to

Dismiss Counts I through VIII relies exclusively on their external emails contending the transfer

was rescinded or was never effectuated and the Court must accept Plaintiff's Complaint as true,

Defendants' Motion to Dismiss as to these Counts is **DENIED**.[3]

The Court notes that in their reply brief Defendants further argue Plaintiff failed to plead

any fraud with particularity as required by Federal Rule of Civil Procedure 9(b). (ECF No. 22 at

6.) Specifically, they argue "[i]n addition to absence of a completed transfer, the insufficiency of

Plaintiff's claims here is illustrated by the absence of any specifics regarding what Defendants did

to fraudulently induce Plaintiff into entering the Forbearance Agreement." (*Id.* at 7.) This is a new

argument which Defendants' cannot raise for the first time in a reply. "It is axiomatic in federal

practice that arguments raised for the first time in a reply brief should be disregarded." *Dana*

---

[2] Defendants contended at Oral Argument that there was no transfer or if there was a transfer it was rescinded and therefore, Plaintiff's Complaint fails as a matter of law. However, they conceded Plaintiff may have causes of action, other than fraudulent transfer claims, not plead in this Complaint. Therefore, Plaintiff may file an amended complaint to conform to the record as supplemented after the Motion to Dismiss and Defendants' declarations made at Oral Argument within 14 days of the accompanying Order.

[3] Because Defendants' argument, in its moving brief and at Oral Argument, is exclusively that Counts I through VIII fail because there was never a transfer, the Court need not delve into an analysis of the law under each claim.

*Transport v. Ableco Finance*, No. 04-2781, 2005 WL 2000152, at *6 (D.N.J. Aug. 17, 2005).

Accordingly, the Court will not entertain this argument.

### 2. Count IX

Defendants argue Plaintiff's request for an accounting of Parker Publications and Recorder Publishing pursuant to N.J. Stat. Ann. § 14A:5-28 should be denied for two reasons. (ECF No. 16-3 at 12.) As to an accounting of Parker Publications, Defendants argue she is no longer a shareholder of Parker Publications and therefore cannot show a fiduciary or trust relationship allowing her to seek an accounting under the statute. (*Id.* at 13.) As to Recorder Publishing, they argue that "because of the failure of the underlying fraud claims of Plaintiff's Complaint, Plaintiff has made no showing that there is a need for discovery of the books and records of Recorded Publications, let alone a burdensome accounting." (*Id.*)

New Jersey Statute Annotated Section 14A:5–28 allows shareholders of New Jersey corporations to bring a books and records action to obtain copies of board minutes and other corporate records. Specifically, N.J. Stat. Ann. § 14A:5–28(4) states:

> Nothing herein contained shall impair the power of any court, upon proof by a shareholder of proper purpose, *irrespective of the period of time during which the shareholder shall have been a shareholder of record*, and irrespective of the number of shares held by him, to compel the production for examination by such shareholder of the books and records of account, minutes, and record of shareholders of a corporation. The court may, in its discretion prescribe any limitations or conditions with reference to the inspection, or award any other or further relief as the court may deem just and proper. The court may order books, documents and records, pertinent extracts therefrom, or duly authenticated copies thereof, to be brought within this State and kept in this State upon whatever terms and conditions as the order may prescribe. In any action for inspection the court may proceed summarily.

(emphasis added).

The Complaint alleges Plaintiff was previously a shareholder of Parker Publications, therefore she is entitled to request the production of books and records of account. Moreover, because Plaintiff's underlying fraud claims will proceed at this time, and Plaintiff's Complaint must be accepted as true, the Court finds Plaintiff has set forth allegations establishing "proper purpose" for an accounting. Indeed, Plaintiff alleges her "review of the 2015 combined audited financial statements of Record Publishing and Parker Publications reflect various undisclosed shareholder loans and other undisclosed and potentially improper transaction which may materially impact Plaintiff's beneficial interest in Record Publishing." (ECF No. 1 ¶ 130.) Accordingly, Defendants' Motion to Dismiss as to Count IX is also **DENIED**.

**B. Motion for Writ of Attachment**

Plaintiff "seeks an order granting prejudgment writ of attachment of all personal property owned by Defendants within the State of New Jersey, including without limitation Defendants' ownership interest in Greenvale, Parker Publications and Recorder Publishing." (ECF No. 17-3 at 3.) Defendants argue Plaintiff has failed to demonstrate she is entitled to a writ of attachment. In relevant part, they argue there are no statutory grounds for the issuance of the writ because they have not assigned, removed or disposed of any of their property with the intent to defraud their creditors. (ECF No. 20 at 9.)

Federal Rule of Civil Procedure 64(a) provides:

> At the commencement of and throughout an action, every remedy is available that, under the law of the state where the court if located, provides for seizing a person or property to secure satisfaction of the potential judgment. But a federal statute governs to the extent it applies.

Pursuant to Federal Rule of Civil Procedure 64, a federal court must apply the laws of the state in which it sits in determining whether an attachment of property is appropriate. *Granny*

*Goose Foods v. Bhd. of Teamsters, Local No. 70*, 415 U.S. 423, 436 n.10 (1974); *see also*

*Marsellis-Warner Corp. v. Rabens*, 51 F. Supp. 2d 508, 536 (D.N.J. 1999) ("State law governs an

application for a writ of attachment."); *see also McQueeny v. J.W. Fergusson & Sons, Inc.*, 527 F.

Supp. 728, 731 (D.N.J. 1981) ("The federal rules of procedure spell out no details for the writ.

They merely provide that State law is to be applied."); *Prozel & Steigman, Inc. v. Int'l Fruit*

*Distrib.*, 171 F. Supp. 196, 199 (D.N.J. 1959) (stating that attachment remedies removed from state

court are governed by state law).

New Jersey Court Rule 4:60–5(a) permits a writ of attachment to be issued based on a

finding that:

> (1) there is a probability that final judgment will be rendered in favor
> of the plaintiff; (2) there are statutory grounds for issuance of the
> writ; and (3) there is a real or personal property of the defendant at
> a specific location within this State which is subject to the
> attachment.

*See Preferred Real Estate Invs., LLC v. Lucent Techs., Inc.*, No. 07-05374, 2008 WL 2414968, at

*1 (D.N.J. June 11, 2008) (citing *Empresas Lourdes, S.A. v. Kupperman*, No. 06-5014, 2007 WL

2814660, at *3 (D.N.J. Sept. 25, 2007). Attachment is "an extraordinary process." *Corbit v. Corbit*,

13 A. 178 (N.J. 1888). Thus, "jurisdiction to issue it must be shown by the party suing o[n] such

writ," *id.*, and the "rules regarding attachment must be strictly construed," *Wolfson v. Bonello*, 637

A.2d 173, 181 (N.J. Super. Ct. App. Div. 1994).

The Court agrees with Defendants. At this time, Plaintiff has failed to demonstrate she is

entitled to a writ of attachment because there is no statutory ground for the issuance of the writ.

The elements of New Jersey Court Rule 4:60–5(a) are conjunctive; therefore, all three elements

must be present for the issuance of a writ of attachment. Because the Court finds element two is

lacking, it will not and need not address the other two elements. Accordingly, the Court will only

address the second element—whether Plaintiff has plead statutory grounds for issuance of a writ of attachment.

Statutory grounds for issuance of a writ of attachment are set forth in N.J. Stat. Ann. § 2A:26-2. Plaintiff only relies on N.J. Stat. Ann. § 2A:26-2(a), therefore the Court will only address that ground. N.J. Stat. Ann. § 2A:26-2(a) states:

> An attachment may issue out of the Superior Court upon the application of any resident or nonresident plaintiff against the property, real and personal, of any defendant in any of the following instances:
>
> a. Where the facts would entitle plaintiff to an order of arrest before judgment in a civil action; and in such cases the attachment may issue against the property of a female, or of a corporation in the same manner as though the defendant would be liable to arrest in a civil action, except that, in actions founded upon a tort, an attachment shall not issue against a corporation upon which a summons can be served in this State[.]

A plaintiff is entitled to an order of arrest before judgment in a civil action "founded upon contract, express, or implied, due to plaintiff from defendant," when one of the following is established:

> a. That defendant is about to remove any of his property out of the jurisdiction of the court in which the action is about to be commenced or is then pending with intent to defraud his creditors; or
>
> b. That defendant has property or choses in action which he fraudulently conceals; or
>
> c. That defendant has assigned, removed or disposed of, or is about to assign, remove or dispose of, any of his property with intent to defraud his creditors; or
>
> d. That defendant fraudulently contracted the debt or incurred the demand.

N.J. Stat. Ann. § 2A:15-42. Plaintiff argues subparts c and d apply to this matter. The Court does not agree.

13

As a preliminary matter, a writ of attachment is an extraordinary remedy. *Sentry Ins. v. Sky Mgmt., Inc.*, 34 F. Supp. 2d 900, 903 (D.N.J. 1999). At this time, the Court is uncertain as to whether Defendants have assigned, removed or disposed of any of their property or whether Defendants fraudulently contracted any debt. While Plaintiff contends a transfer of Greenvale was executed, Defendants contend and provide emails demonstrating the transfer was either rescinded or invalid. In addition, Plaintiff acknowledges that for a transfer to be completed she, as Manager, was required to consent and did not consent to the transfer. Therefore, at this time Plaintiff has not properly established Defendants assigned, removed, or disposed of property. As such, Plaintiff has failed to meet the requirements of N.J. Stat. Ann. § 2A:15-42. *Sentry Ins.*, 34 F. Supp. 2d at 905 (finding that "in order to obtain a writ of attachment, plaintiff must demonstrate that the requirements of § 2A:15–42, § 2A:26–2, and R. 4:60–5 have been satisfied"). Accordingly, Plaintiff's Motion for Writ of Attachment is **DENIED**.[4]

## IV. CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss is **DENIED**. Plaintiff's Motion for Writ of Attachment is also **DENIED**.

Date: December 20, 2018                              */s/ Brian R. Martinotti*
                                                    **HON. BRIAN R. MARTINOTTI**
                                                    **UNITED STATES DISTRICT JUDGE**

---

[4] In her reply brief, Plaintiff requests that the Court allow expedited discovery if it believes there are factual issues preventing the entry of the writ at this time. (ECF No. 23 at 14.) This request is **DENIED** at this time.